UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD AKERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV2022 HEA |
| | ) |
| RSC EQUIPMENT RENTAL, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Petition, [Doc. No. 6], and Plaintiff's Motion to Voluntarily Dismiss Defendants Bret Kasubke and Tony Toman, [Doc. No. 8]. The parties oppose the respective motions. For the reasons set forth below, the Motion to Dismiss the First Amended Petition is granted. The Motion to Voluntarily Dismiss Defendants Kasubke and Toman is denied as moot.

## Facts and Background

Plaintiff brought this action against Defendants for wrongful termination and fraudulent misrepresentation against Defendants alleging the following:

Plaintiff was hired on September 15, 2008 as the Business Manager at Defendant RSC Equipment Rental, Inc., (RSC). Plaintiff was advised that RSC had very lofty ethical standards and that employees were advised that they had not only

the right, but the responsibility, to report violations of company policy, public policy and/or potential law violations by company employees. Plaintiff was provided with a booklet entitled, "The Right Way, Every Day" which was an employee's guide to RSC's code of business conduct and ethics. Plaintiff also received emails, correspondence and participated in company sponsored training wherein he was instructed regarding the specifics of RSC's company policies and practices and the importance of adhering to the same and reporting potential violations by other employees.

Conduct outlined as inappropriate by the various company communications included inappropriate outbursts or violent temper tantrums against co-workers, harassment of fellow employees, including oral assaults, dishonesty, giving inappropriate discounts, using company equipment for free and/or providing same for free to spouses, family members or friends, and doing so without proper written documentation or authorization, and falsifying company documents.

In March, 2009, Plaintiff was in a meeting with Defendant Kasubke. Defendant Kasubke allegedly suddenly and inexplicably became angered, leaned across a table until he was inches away from Plaintiff's face and started screaming at him to a degree that Plaintiff was placed in fear of physical injury by Defendant Kasubke.

Plaintiff alleges that he reasonably believed Defendant Kasubke's conduct violated company policy and that it also might constitute a crime under Missouri statutes. He believed he had a duty to report the conduct to the company's human relations department and did so the next day.

During the same time frame, Plaintiff alleges he became aware of certain business practices occurring at the St. Louis branch of Defendant RSC that Plaintiff reasonably believed violated the professional ethics as outlined in the company's policies and practices. Plaintiff reasonably believed that some of the conduct potentially violated criminal statutes.

During the same time frame, Plaintiff received the latest in a series of communications from RSC management to its employees via an email from Erik Olsson, the President and CEO of RSC. Plaintiff was advised that if he had a question or concern that was not adequately being addressed by other RSC supervisory personnel that he had an absolute right and responsibility to contact Olsson. The email also advised that no employee would be punished for sharing an idea, question or concern in good faith to Olsson.

Count I of Plaintiff's First Amended Complaint is brought as a wrongful termination in violation of public policy. This count alleges that on May 8, 2009, Plaintiff forwarded a letter to Olsson relating his concerns that various actions and

conduct by Defendant Kasubke and a number of other RSC employees that he reasonably believed to be violative of state and federal criminal statutes and that he reasonably believed were also violative of professional ethics as outlined in company policy: Defendant Kasubke's "verbal assault and non-verbal" threat to him in March, 2009; inaccurate and untruthful dating information was entered on certain company contracts and paperwork in order to avoid late delivery status; pickup tickets were not generated at the time the customer called off equipment in order to avoid unavailable status; equipment was transferred from one branch to another to avoid depreciation costs being attributed to the sending branch; and RSC equipment was taken out of the yard for potentially inappropriate personal use by employees and without appropriate written documentation or authorization. Plaintiff alleges that he reasonably believed that each element of the above conduct was not only violative of company policy, but was violative of various Missouri and Federal criminal statutes relating to assaults, harassment and theft by deceit, as well as clear mandates of public policy and professional ethics.

    The First Amended Complaint further alleges that RSC did a brief, superficial investigation into Plaintiff's complaints and took no action against Defendant Kasubke, Toman or anyone else at RSC. Further, Plaintiff claims that sometime between March and May, 2009, after Plaintiff made his complaints, Defendant

Kasubke together with Defendant Toman, and possibly other middle-level management, began a campaign to discredit Plaintiff and cause the termination of his employment. This, according to the First Amended Complaint, was done in retaliation for Plaintiff's March 2009 complaints against Defendant Kasubke and his May, 2009 complaint letter to Olsson.

According to the First Amended Complaint, Plaintiff's employment was terminated on August 17, 2009, allegedly as a direct result of his reporting the alleged violations of federal or state law, public policy and/or company policy.

Count II of the First Amended Complaint is brought for fraudulent misrepresentation against Defendant RSC. It repeats the above allegations and claims that between the time of his employment beginning in September, 2008 and May 8, 2009, Defendant acting, through its president and CEO, various supervisors, managers, and human resources personnel, represented to Plaintiff, orally and in writing, that he had a duty and a responsibility to report to management any concerns, issues, violations of company policy, public policy and/or criminal statutes, including the types of conduct alleged. These individuals represented to Plaintiff that he would in no way be punished if he made such reports in good faith. Plaintiff claims the individuals making the representations knew they were either false or were unaware of the truth or falsity of the representations, but persisted in

their assurances to Plaintiff that the representations were true. Plaintiff alleges he was unaware that the representations were false, that they were material to his decision to make a formal written complaint, that RSC intended that the false representations would cause Plaintiff and other employees to make good faith complaints and reports similar to Plaintiff's, that he had a right to rely on the representations, and did rely on them. He claims that as a direct result of his reliance on RSC's misrepresentations, he incurred damages.

Defendants move for dismissal for failure to state a cause of action.

## **Discussion**

When ruling on a motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th

Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009).  While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient.  *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949.  The complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir.2010); *Zutz v. Nelson,* 601 F.3d 842, 848 (8th Cir. 2010); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950.  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.  The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**Wrongful Termination**

The Missouri Supreme Court very recently had occasion to consider the requirements of a wrongful termination claim.

> The at-will employment doctrine is well-established Missouri law. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo.1998); *Dake v. Tuell*, 687 S.W.2d 191 (Mo.1985); *Amaan v. City of Eureka*, 615 S.W.2d 414 (Mo.1981). Absent an employment contract with a "definite statement of duration ... an employment at will is created." *Luethans v. Washington University*, 894 S.W.2d 169 (Mo.1995); *McCoy v. Spelman Memorial Hosp.*, 845 S.W.2d 727 (Mo.App.1993). An employer may terminate an at-will employee "for any reason or for no reason." *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. banc 1998); see also *McCoy v. Caldwell County*, 145 S.W.3d 427, 429 (Mo. banc 2004); *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 275 n. 2 (Mo. banc 1984); *Johnson*, 745 S.W.2d at 662; *Dake,* 687 S.W.2d at 192-93; *Amaan*, 615 S.W.2d at 415. The at-will doctrine is "[r]ooted in freedom of contract and private property principles, designed to yield efficiencies across a broad range of industries." James A. Sonne, Firing Thoreau: Conscience and At-Will Employment, 9 U. Pa. J. Lab. & Emp. L. 235 (2007); Richard A. Epstein, In Defense of the Contract at Will, 51 U. Chi. L.Rev. 947, 953-58 (1984).
>
> However, the at-will doctrine is limited in certain respects. An employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability." Section 213.055, RSMo. Supp.2005. In addition, Missouri recognizes the public-policy exception to the at-will-employment rule. *Fleshner v. Pepose Vision Institute, Inc.*, SC90032, Slip op. at 14; *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333 (Mo.App.1995).

C. The Public Policy Exception for Wrongful Discharge

The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn. An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties. See *Porter v. Reardon Mach. Co.*, 962 S.W.2d 932 (Mo.App.1998); See also *Boyle v. Vista Eyewear, Inc*., 700 S.W.2d 859 (Mo.App.1985).

      1. Well Established and Clearly Mandated Public Policy

It is well-settled that public policy is not found "in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public." *In re Rahn's Estate*, 316 Mo. 492, 501, 291 S.W. 120, 123 (Mo.1926). Therefore, a wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. See *Johnson v. McDonnell Douglas Corp*., 745 S.W.2d 661, 663 (Mo. banc 1988). Absent such explicit authority, the wrongful discharge action fails as a matter of law. *Id.* Moreover, not every statute or regulation gives rise to an at-will wrongful termination action. See, e.g., *Lay v. St. Louis Helicopter Airways, Inc*., 869 S.W.2d 173 (Mo.App.1993).
A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires. See *id*. Such vagueness would also cause "the duties imposed upon employers [to] become more vague" and create difficulties "for employers to plan around liability based on the vagaries of judges." Timothy Heinz, The Assault on the Employment at Will Doctrine, 48 Mo. L.Rev. 855, 876 (1983).

## 2. Reporting Violations of Law: Whistle blowing

> [Plaintiff] claims that he falls into the second theory of wrongful discharge, that of reporting violations of law or public policy to his superiors, commonly referred to as "whistleblowing." *Lynch v. Blanke Baer & Bowey Krimko, Inc*. 901 S.W.2d 147, 150 (Mo.Appl995). For [Plaintiff] to prevail, he must show that he "reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of ... well established and clearly mandated public policy." *Id* . (emphasis added).
>
> "The mere citation of a constitutional or statutory provision in a [pleading] is not by itself sufficient to state a cause of action for retaliatory discharge, the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge." 82 Am.Jur.2d § 61 citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (Ill.1991); See generally *Johnson*, 745 S.W.2d at 663. Generally, there is no whistleblowing protection for an employee who merely disagrees personally with an employer's legally-allowed policy. Daniel P. Westman, Whistleblowing the Law of Retailiatory Discharge, 112(1991). See also 82 Am.Jur.2d § 54.

*Margiotta v. Christian Hosp. Northeast Northwest,* 2010 WL 444886, 2 -3 (Mo.,2010) (footnote omitted).

While Plaintiff makes vague references to federal and state criminal statutes which he contends were violated, under *Margiotta*, these references are insufficient to properly plead a wrongful discharge action. Nor are Plaintiff's allegations of "public policy" sufficient to state a claim. Plaintiff must allege which statutes were violated and well established and clearly mandated public policy based on a constitutional provision, a statute a regulation based on a statute or a rule

promulgated by a governmental body in order to state a claim for wrongful termination. *Id.* Count I, therefore must be dismissed.[1]

**Fraudulent Misrepresentation**

> The elements of a fraudulent representation claim in Missouri are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's reasonable reliance on its truth; and (5) the hearer's consequent and proximately caused injury." *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo.Ct.App.2002).

*Lafarge North America, Inc. v. Discovery Group L.L.C.* 574 F.3d 973, 981 (8th Cir.2009).

Plaintiff's fraudulent misrepresentation claim must comply with the heightened pleading standards of Rule 9(b), which require plaintiffs to plead "the circumstances constituting fraud ... with particularity." Fed.R.Civ.P. 9(b). Under Rule 9(b), a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir.2001) (quoting *Bennett v. Berg*,

---

[1] In his opposition to the Motion to Dismiss, Plaintiff cites certain Missouri criminal statutes which he contends may have been violated by Defendant Kasubke. Defendants correctly argue that Plaintiff may not amend his petition in his brief in opposition to the motion. *Morgan Distributing Co. Undynamic Corp*, 868 F.2d 992, 995 (8th Cir. 1989).

685 F.2d 1053, 1062 (8th Cir.1982), adhered to on reh'g, 710 F.2d 1361 (8th Cir.1983) (en banc)). In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir.2003). This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels*, 259 F.3d at 920. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Property Investments Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (1995). *BJC Health System v. Columbia Cas. Co.* 478 F.3d 908, 917 (8th Cir. 2007).

Plaintiff's First Amended Complaint vaguely sets out that between September, 2008 and May 8, 2009, defendant RSC, through Olsson, various supervisors, managers, and human resources personnel made oral and written representations concerning ethics and reporting policies. Although Plaintiff alleges the required elements of a claim for fraudulent misrepresentation, Plaintiff does not allege how the statements made were false when they were made, who specifically, other than Olsson made what statements and when they were made. If Plaintiff is relying solely on Olsson's email, he should so state. If, on the other hand, there are other particular statements and employees who made the statements, Plaintiff is

required to so state. Plaintiff must also set out the particular reasons how the statements were false when made. Merely stating the conclusory elements of the claim is insufficient to particularly state a fraudulent misrepresentation.

## **Conclusion**

In sum, the Petition fails to plausibly allege the claims for which Plaintiff seeks relief.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 6], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Voluntarily Dismiss Defendants Kasubke and Toman, [Doc. No. 8], is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiff may file a motion to amend within 14 days from the date of this Opinion, Memorandum and Order for the Court's consideration.

Dated this 12th day of July, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE