UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD AKERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV2022 HEA |
| ) | |
| RSC EQUIPMENT RENTAL, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, [Doc. No. 20]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion to Dismiss is denied.

## Facts and Background

Plaintiff brought this action for wrongful termination and fraudulent misrepresentation against Defendant alleging the following:

Plaintiff was hired on September 15, 2008 as the Business Manager at Defendant RSC Equipment Rental, Inc., (RSC). Plaintiff was advised that RSC had very lofty ethical standards and that employees were advised that they had not only the right, but the responsibility, to report violations of company policy, public policy and/or potential law violations by company employees. Plaintiff was provided with a booklet entitled, "The Right Way, Every Day" which was an

employee's guide to RSC's code of business conduct and ethics. Plaintiff also received emails, correspondence and participated in company sponsored training wherein he was instructed regarding the specifics of RSC's company policies and practices and the importance of adhering to the same and reporting potential violations by other employees.

Conduct outlined as inappropriate by the various company communications included inappropriate outbursts or violent temper tantrums against co-workers, harassment of fellow employees, including oral assaults, dishonesty, giving inappropriate discounts, using company equipment for free and/or providing same for free to spouses, family members or friends, and doing so without proper written documentation or authorization, not properly receiving transfers to affect depreciation expense, falsifying company documents, accounting irregularities or fraud, and violating any federal or state laws.

In March, 2009, Plaintiff was in a meeting with Bret Kasubke. Kasubke allegedly suddenly and inexplicably became angered, leaned across a table until he was inches away from Plaintiff's face and started screaming at him to a degree that Plaintiff was placed in fear of physical injury by Kasubke.

Plaintiff alleges that he reasonably believed Kasubke's conduct violated company policy and that it also might constitute a crime under Missouri statutes.

He believed he had a duty to report the conduct to the company's human relations department and did so the next day. He also eventually had a direct discussion with Kasubke and Tony Toman, the Regional Manager of Defendant, and direct superior to both Plaintiff and Kasubke.

During the same time frame, Plaintiff alleges he became aware of certain business practices occurring at the St. Louis branch of Defendant that Plaintiff reasonably believed violated the professional ethics as outlined in the company's policies and practices. Plaintiff reasonably believed that some of the conduct potentially violated criminal statutes.

During the same time frame, Plaintiff received the latest in a series of communications from RSC management to its employees via an email from Erik Olsson, the President and CEO of RSC. Plaintiff was advised that if he had a question or concern that was not adequately being addressed by other RSC supervisory personnel that he had an absolute right and responsibility to contact Olsson. The email also advised that no employee would be punished for sharing an idea, question or concern in good faith to Olsson.

The Second Amended Petition also sets out a number of criminal statutes making clear statements of public policy:

    a.      According to § 565.070 RSMo, a person commits the crime of

assault in the third degree when he "purposely places another person in apprehension of immediate physical injury." *See* § 565.070 .1(3) RSMo.

This crime is a misdemeanor; and

b.      According to § 570.030.1 RSMo. , a person commits the crime of stealing or theft by deceit if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or collusion. This crime may be a felony or a misdemeanor depending on the amount of the theft.

The Second Amended Complaint further alleges that after making his March hotline call and his May meeting with Toman, Plaintiff believed he had exhausted his efforts to communicate his concerns to other supervisory personnel. On May 8, 2009, Plaintiff forwarded a letter to President/CEO Olsson relating his concerns that he reasonably believed that various actions and conduct by Kasubke and a number of other RSC employees were violative of state and federal criminal statutes and were violative of professional ethics as outlined in company policy.

It is further alleged that in addition to "Kasubke's assault in March 2009," Plaintiff reported various financial irregularities that were occurring at the St. Louis County branch of Defendant. This branch was managed by Richard Wegner, whose immediate supervisor was Kasubke. Wegner and Kasubke were friends, and Plaintiff believed that both men were not only knowledgeable of the financial irregularities, but were actually directing employees to engage in them.

According to the Second Amended Complaint, these included the following:

    a. Branch employees were falsifying delivery times on customer rental contracts that were computer generated, by backdating them so the branch could avoid "late delivery" status. This was a factor in the bonus calculation formula used for determining employee bonuses for Wegner, Kasubke and other branch employees;

    b. Pickup tickets were being falsified by RSC employees to appear that equipment was being promptly picked up from customers at job sites earlier than the actual pickup to avoid having the equipment remain in prolonged "unavailable" status. This was also a factor in determining whether Wegner, Kasubke and other branch employees received bonuses;

    c. Equipment was transferred from one branch to another to avoid depreciation costs being attributed to the sending branch; and

    d. RSC equipment was taken out of the yard for potentially inappropriate personal use by employees and without written documentation or authorization.

Plaintiff alleges that the conduct of Kasubke in March 2009 constituted a violation of Missouri public policy as stated in § 565.070.1(3) RSMo. in that Kasubke placed Akers in fear of physical contact and physical injury. Additionally, Plaintiff states that Kasubke's conduct specifically violates portions of RSC's Code of Conduct as outlined in the Second Amended Complaint

It is further alleged that the conduct outlined in the Second Amended Complaint constitutes a violation of Missouri public policy as specifically articulated in § 570.030.1 RSMo., in that the branch employees engaging in the

conduct were obtaining enhanced bonuses by falsifying paperwork to make the branch's performance appear to be better. It is alleged that this conduct effectively constituted stealing money and/or services from Defendant by deceit.

Plaintiff alleges that he believes a superficial investigation into his complaints was conducted, and no adverse action was taken against anyone at RSC.

The Second Amended Complaint alleges that sometime between March and May, 2009, Kasubke together with Toman and possibly other middle level management began a campaign to discredit Plaintiff and cause the termination of his employment in retaliation for his complaints. Plaintiff's employment was terminated on August 17, 2009, allegedly as a result of his reporting the alleged violations of federal or state law, public policy, and/or company policy.

Plaintiff's Second Amended Complaint is brought as a wrongful termination in violation of public policy. Defendant moves for dismissal for failure to state a cause of action.

## **Discussion**

When ruling on a motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009). While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir.2010); *Zutz v. Nelson,* 601 F.3d 842, 848 (8th Cir. 2010); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed.

*Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

As previously held, the Missouri Supreme Court very recently had occasion to consider the requirements of a wrongful termination claim.

> The at-will employment doctrine is well-established Missouri law. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo.1998); *Dake v. Tuell*, 687 S.W.2d 191 (Mo.1985); *Amaan v. City of Eureka*, 615 S.W.2d 414 (Mo.1981). Absent an employment contract with a "definite statement of duration ... an employment at will is created." *Luethans v. Washington University*, 894 S.W.2d 169 (Mo.1995); *McCoy v. Spelman Memorial Hosp.*, 845 S.W.2d 727 (Mo.App.1993). An employer may terminate an at-will employee "for any reason or for no reason." *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. banc 1998); see also *McCoy v. Caldwell County*, 145 S.W.3d 427, 429 (Mo. banc 2004); *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 275 n. 2 (Mo. banc 1984); *Johnson*, 745 S.W.2d at 662; *Dake,* 687 S.W.2d at 192-93; *Amaan*, 615 S.W.2d at 415. The at-will doctrine is "[r]ooted in freedom of contract and private property principles, designed to yield efficiencies across a broad range of industries." James A. Sonne, Firing Thoreau: Conscience and At-Will Employment, 9 U. Pa. J. Lab. & Emp. L. 235 (2007); Richard A. Epstein, In Defense of the Contract at Will, 51 U. Chi. L.Rev. 947, 953-58 (1984).

However, the at-will doctrine is limited in certain respects. An employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability." Section 213.055, RSMo. Supp.2005. In addition, Missouri recognizes the public-policy exception to the at-will-employment rule.

*Fleshner v. Pepose Vision Institute, Inc.*, 304 S.W.3d 81, 91 (Mo.2010)

> [A] wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. Absent such explicit authority, the wrongful discharge action fails as a matter of law. Moreover, not every statute or regulation gives rise to an at-will wrongful termination action.

*Margiotta v. Christian Hosp., Ne. Nw.,* 315 S.W.3d 342, 346 (Mo.2010)

> Where a plaintiff claims that he was wrongfully discharged for "reporting violations of law or public policy to his superiors, commonly referred to as 'whistleblowing,' " the plaintiff "must show that he reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of well established and clearly mandated public policy." [*Margiotta*, 315 S.W.3d at 346](internal quotations, alteration, and citation omitted). The plaintiff's mere citation of a constitutional or statutory provision in a pleading is not by itself sufficient to state a cause of action for retaliatory discharge, the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge. Generally, there is no whistleblowing protection for an employee who merely disagrees personally with an employer's legally-allowed policy. *Id*. (internal quotations, alteration, and citations omitted). "[T]o sustain this type of claim, the 'petition must specify the legal provision violated by the employer, and it must affirmatively appear from the face of the petition that the legal provision in question involves a clear

mandate of public policy.' " *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo.Ct.App.2000) (quoting *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 338-39 (Mo.Ct.App.1995)). Where plaintiff "fail[s] to identify any specific statute, constitutional provision or regulation that was violated," a trial court does not err in dismissing the plaintiff's claim. *Id.*; see also *Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 939 (Mo.Ct.App.1998).

*Frevert v. Ford Motor Co.*, 614 F.3d 466, 470 -475 (8th Cir. 2010).

The reported misconduct relied upon by Plaintiff is the alleged assault and the alleged effective theft of company goods and services. In the Second Amended Complaint, Plaintiff cites the specific statutes he believes were violated, that these statutes evince clear mandates of public policy, and that he reported the believed violation of the statutes. Unlike Plaintiff's prior Complaint, this Complaint clearly sets out the necessary allegations to give rise to a claim. The Court concludes that Missouri courts would hold that this is sufficient to support a claim for wrongful termination for whistle-blowing. *See Margiotta,* 315 S.W.3d 342, 346 at 346-48 (holding that reporting unsafe patient practices at a hospital did not support a whistleblower's claim against the hospital because no federal or state regulations were reportedly violated); *Frevert,* 614 F.3d at 471 (holding that under Missouri law, a terminated employee, who alleged that he was

wrongfully discharged after he made internal complaints about coworkers' violation of company policy, did not establish wrongful termination claim under whistleblower exception to doctrine of employment at-will under Missouri law, since he failed to specify a legal provision that was violated by coworkers and whether such legal provision involved a clear mandate of public policy.

Unlike the plaintiffs in *Margiotta* and *Frevert*, Plaintiff's Second Amended Complaint now sets out the requirements to state a claim for wrongful termination. At this stage of the proceedings, it is not incumbent upon the Court to determine whether the allegations can ultimately be proven, and the Court makes no such determination herein. Rather, for the purposes of a motion to dismiss, the Court looks solely to the allegations of the Second Amended Complaint to ascertain whether the claim is sufficiently alleged. As stated, the Second Amended Complaint alleges a claim.

While Defendant argues that Kasubke and Toman cannot be held individually liable for wrongful discharge, as Plaintiff points out, neither individual has been named as a defendant in the Second Amended Complaint, and have therefore been dismissed from this action. "It is well-

established that an amended complaint supercedes an original complaint and renders the original complaint without legal force." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 928 (8th Cir.2005).

## Conclusion

In sum, the Second Amended Complaint now sets forth sufficient facts and statutory support to plausibly allege the claim for which Plaintiff seeks relief.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 20], is **DENIED**.

Dated this 31st day of December, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE